UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JOHN JACKSON | CIVIL ACTION |
| v. | NO. 16-15837 |
| AETNA LIFE INSURANCE COMPANY | SECTION "F" |

ORDER AND REASONS

Before the Court are cross motions for summary judgment by John Jackson and Aetna Life Insurance Company. For the following reasons, Jackson's motion is DENIED and Aetna's motion is GRANTED.

**Background**

John Jackson was a process safety management and risk management program coordinator at a biofuel plant in Mississippi. He was diagnosed with chronic inflammatory demyelinating polyradiculoneuropathy (CIDP),[1] multi-focal motor neuropathy,[2] diabetes, muscle weakness, high blood pressure, and bilateral

---

[1] CIDP is a rare neurological disorder characterized by progressive weakness and impaired sensory function in the legs and arms. *Chronic Inflammatory Demyelinating Polyneuropathy*, NAT'L INST. OF NEUROLOGICAL DISORDERS & STROKE, https://www.ninds.nih.gov/Disorders/All-Disorders/Chronic-Inflammatory-Demyelinating-Polyneuropathy-CIDP-Information-Page (last visited Dec. 12, 2017).

[2] Multi-focal neuropathy is a rare progressive auto-immune disorder causing "asymmetrical weakness in the patient's limbs." *Multifocal Motor Neuropathy*, GBS CIDP FOUND. INT'L, https://www.gbs-cidp.org/variants/multifocal-motor-neuropathy/ (last visited Dec. 12, 2017).

carpal tunnel syndrome. He took disability leave around October 2013, and has not returned to work.[3]

Jackson was enrolled in a group insurance policy provided by his employer, KiOR, Inc. The policy provides disability and life insurance benefits under an employee welfare benefit plan governed by the Employee Retirement Income Security Act. Specifically, the plan offers Long Term Disability coverage which provides the plan participant with a source of income if they become disabled and are unable to work because of an illness, injury, or disabling pregnancy-related condition. In the event that the participant is "permanently and totally disabled," he is also eligible for life insurance waiver of premium (WOP) benefits.[4] This relieves the participant of making any further contributions for life insurance coverage and relieves his employer from making them on his behalf, while maintaining his coverage. Finally, the plan provides an Accelerated Death Benefit feature, which allows the participant to receive a partial life insurance benefit if they are terminally ill. A person is terminally ill if they have an illness or physical condition "which can reasonably be expected to result in death in two years or less."

---

[3] Jackson's doctors characterize him as "chronically and medically disabled" due to his "complicated mixed autoimmune polyneuropathy."
[4] The policy refers to this as "Permanent and Total Disability Benefit."

Following his diagnosis, Jackson submitted a claim to the plan's issuer, Aetna Life Insurance Company, for Long Term Disability benefits and WOP benefits. Aetna determined that Jackson was totally disabled and approved both claims. In the letter approving his claim for LTD benefits, Aetna informed Jackson that his gross LTD benefit was $3,750 per month and would begin April 27, 2014. However, it notified him that if he is awarded Social Security Disability Income benefits, his monthly LTD would be reduced by the amount awarded by the Social Security Administration. Failure to disclose an award of SSDI benefits would result in an overpayment, and Aetna may attempt to collect the surplus amount. The letter also notified him that his policy may require him to apply for SSDI benefits.[5]

The Social Security Administration informed Jackson on July 16, 2014 that he was approved for SSDI benefits totaling $1,636.80 per month, effective April 1, 2014. By letter dated August 27,

---

[5] When making his claim for LTD benefits, Jackson signed a Reimbursement Agreement on February 14, 2014. It stated:

> If my application for Long Term Disability (LTD) benefits is approved, in consideration of the payment of LTD benefits without reduction on account of other benefit payments to which I or my eligible dependents may become entitled under the United States Social Security Act or from any of the other income sources described in the LTD policy, I hereby agree to reimburse Aetna for any and all overpayments made to me under the LTD policy.

In his opposition to the defendant's motion for summary judgment, Jackson states that Aetna "forced" him to sign the document.

3

2014, Aetna notified Jackson that his LTD benefit would be reduced by $1,636, and he would, as a result, receive a LTD benefit of $2,114 per month. Further, it stated that Jackson was overpaid $6,745.45 and he would need to reimburse Aetna for that amount. If Jackson failed to reimburse Aetna within two weeks, Aetna said, his monthly benefit amount would be applied toward his overpayment.

By letter dated September 8, 2014, the Social Security Administration notified Jackson and his wife that their son was awarded $818 per month, effective April 2014, due to Jackson's disability. Unaware that Jackson's son had received the award, Aetna reminded Jackson that Family Social Security benefits awarded to Jackson's dependent would reduce his LTD benefit in a letter dated September 30, 2014. It stated that because Jackson's son was born in October 1996, he appeared to be eligible, and directed them to apply if they hadn't already.[6] Jackson provided Aetna with the FSS Notice of Award in late November 2014. Aetna informed Jackson that his monthly LTD benefits would be reduced by $818 as long as his son received the FSS payments and that he must reimburse Aetna $5,835.07 for the LTD overpayment. Jackson

---

[6] If Jackson's dependent failed to apply to the FSS benefits by October 31, 2014, and submit Proof of Filing or a Notice of Award, Aetna would estimate the FSS benefit award, calculate an estimated overpayment, and seek full reimbursement for that amount.

4

unsuccessfully appealed the offsets for his SSDI award and his son's FSS award to Aetna.[7]

In addition to his claims for LTD and WOP benefits, Jackson filed a claim for Accelerated Death Benefits in January 2016. If Jackson was successful, Aetna would pay him $187,500 immediately and would pay the remainder of his life insurance policy, $62,500, when he died. However, it is undisputed that Jackson is not terminally ill.[8] Accordingly, Aetna denied Jackson's claim, stating that terminal illness is a condition of receiving ADB coverage. Jackson appealed, claiming that the plain language of the policy provides an exception for disabled claimants, and in the alternative, that Texas law requires that Aetna provide ADB coverage to totally disabled claimants.

---

[7] Jackson challenged Aetna's offset of his son's FSS award through several phone calls and letters. Jackson asserted that his son was 18 years old and not dependent on him, and therefore Jackson's benefits should not be reduced. Aetna maintained that the relevant regulations allow children to receive benefits for a parent's disability as long as they were full-time elementary or secondary school students. See 20 C.F.R. § 404.367. Aetna confirmed with the Social Security Administration that Jackson's son was a full time high school student, would graduate in May 28, 2015, and was entitled to FSS benefits despite being 18 years old because he was a full time student. On June 1, 2015, Aetna removed the FSS offset because Jackson's son was no longer a full time student.

[8] Jackson's treating internist, Ernest Sneed, M.D., determined that Jackson was not "terminally ill" and that his medical condition would not "result in a drastically reduced life span."

On October 25, 2017, Jackson sued Aetna, claiming wrongful denial of Long Term Disability benefits and Accelerated Death Benefit coverage, in violation of ERISA.

I.

*A.*

"Standard summary judgment rules control in ERISA cases." Vercher v. Alexander & Alexander, Inc., 379 F.3d 222, 225 (5th Cir. 2004). Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A genuine dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or

depositions, to buttress his claims. Id. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987); Fed. R. Civ. P. 56(c)(2). "[T]he nonmoving party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007)(internal quotation marks and citation omitted). Ultimately, "[i]f the evidence is merely colorable . . . or is not significantly probative," summary judgment is appropriate. Id. at 249 (citations omitted); King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994) ("Unauthenticated documents are improper as summary judgment evidence.").

Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In deciding whether a fact issue exists, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. Scott v. Harris, 550 U.S. 372, 378 (2007). Although the Court must "resolve factual controversies in favor of the nonmoving party," it must do so "only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Antoine v. First Student, Inc., 713 F.3d

7

824, 830 (5th Cir. 2013)(internal quotation marks and citation omitted).

*B.*

The insurance policies in this lawsuit are governed by ERISA, 29 U.S.C. § 1001 *et seq.* ERISA requires that a fiduciary should discharge its duties in the interests of the plan participants and beneficiaries. 29 U.S.C. § 1104(a). But it "does not set out the appropriate standard of review for evaluating benefit determinations of plan administrators, fiduciaries or trustees . . . ." Pierre v. Connecticut Gen. Life Ins. Co./Life Ins. Co. of N. Am., 932 F.2d 1552, 1555 (5th Cir. 1991). The Fifth Circuit determined that the appropriate standard to review factual determinations by plan administrators is abuse of discretion. Id. at 1562. In regards to reviewing plan interpretations, the United States Supreme Court held that *de novo* is the appropriate standard of review "unless the plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). "If discretion were granted, the 'abuse of discretion' standard would apply instead." Vercher v. Alexander & Alexander, Inc., 379 F.3d 222, 226 (5th Cir. 2004).

The plan at issue provides that Aetna "shall have discretionary authority to determine whether and to what extent

8

eligible employees and beneficiaries are entitled to benefits and to construe any disputed or doubtful terms under this Policy . . . ." However, the policies specify that they are governed by Texas and Federal Law. Texas law prohibits the use of discretionary clauses like the one in this plan. The Texas Insurance Code provides, "[a]n insurer may not use a [health or life insurance policy] in this state if the document contains a discretionary clause."[9] TEX. INS. CODE § 1701.062(a); TEX. INS. CODE § 1701.002. Nearly identical provisions in the Texas Administrative Code also prohibit discretionary clauses. See TEX. ADMIN. CODE §§ 3.1202, 3.1203.

Aetna challenges the application of Texas's anti-discretionary law to its policy. It argues that other language in the policy confers Aetna with discretion that is sufficient to create discretionary authority besides the discretionary clause. For support, it points to the Fifth Circuit's opinion in Ariana M. v. Humana Health Plan of Tex., Inc., which held that regardless of the Texas anti-discretionary law, the standard of review for factual determinations is abuse of discretion. 869 F.3d 354, 357 (5th Cir. 2017), reh'g en banc granted, 869 F.3d 354 (5th Cir.

---

[9] The Texas Insurance Code further defines a discretionary clause as "a provision that specifies. . . a standard of review in any appeal process that gives deference to the original claim decision or provides standards of interpretation or review that are inconsistent with the laws of this state." TEX. INS. CODE § 1701.062(b)(2)(D).

2017). The Fifth Circuit in Humana Health Plan was upholding decades of precedent that directed courts to review *factual* determination for an abuse of discretion regardless of whether they contained a discretionary clause. Id. It does not, however, hold that courts may honor discretionary clauses prohibited by the governing state law when determining whether to review *de novo* or for an abuse of discretion. Texas law mandates that the plan's discretionary clause is void. As there is no valid discretionary clause, the appropriate standard of review is *de novo*.[10] See Curtis v. Metro. Life Ins. Co., 3:15-CV-2328-B, 2016 WL 2346739, *3 (N.D. Tex. May 4, 2016); Jacob v. Unum Life Ins. Co. of America, 17-17666, 2017 WL 4764357, *3 (E.D. La. October 20, 2017).

---

[10] In the alternative, Aetna contends that the Texas anti-discretionary clause does not apply because the Texas Insurance Code prohibits the use of a policy with a discretionary clause "in this state," and Jackson worked in Mississippi and now lives in Louisiana. TEX. INS. CODE § 1701.062(a). Because Jackson was not living in Texas when Aetna determined its benefits, it asserts, Aetna did not "use" the policy in Texas and the statute does not apply. However, the Texas Administrative Code provides that "[i]nclusion of a discretionary clause in any form to which this subchapter applies is prohibited." TEX. ADMIN. CODE § 3.1203. That subchapter "applies to any form filed under the Insurance Code Chapters 1701 or 1271," which includes group health insurance and life insurance. Id. § 3.1201; TEX. INS. CODE § 1701.002(1). The Administrative Code gives no indication that it is limited to policies exercised in Texas. Although the Court recognizes that there is some ambiguity, common sense dictates that if a policy states that it is governed by Texas law, the mere fact that a claimant resides outside the state would not give the insurer permission to ignore Texas law. Aetna's argument fails.

II.

At issue is (1) whether Aetna properly deducted Jackson's Social Security Disability Income and his son's Family Social Security benefits from Jackson's monthly Long Term Disability benefits and (2) whether Jackson is entitled to Accelerated Death Benefit coverage. There are no issues of material fact; a summary judgment determination is appropriate. Further, the plaintiff does not contest Aetna's factual determinations, so the Court will only review Aetna's plan interpretation regarding the LTD benefits and the ADB coverage *de novo*.

Courts reviewing ERISA plans must accept the "ordinary and generally accepted meaning" of the controverted provisions. Ramirez v. United Omaha Life Ins. Co., 872 F.3d 721, 725 (5th Cir. 2017). Courts consider how "a person of average intelligence and experience" would interpret the contract language. Wegner v. Standard Ins. Co., 129 F.3d 814, 818 (5th Cir. 1997). "Only if the plan terms remain ambiguous after applying ordinary principles of contract interpretation are we compelled to apply the rule of *contra proferentum* and construe the terms strictly in favor of the insured." Id.

*A.*

A plain reading of the "Accelerated Debt Benefit" section of the policy makes clear that a claimant is only entitled to ADB

coverage if they are terminally ill. The first sentence in the section provides "The plan's Accelerated Death Benefit feature allows you to receive a partial life insurance benefit if you [or] your spouse are diagnosed with an illness or physical condition that has resulted in your being terminally ill." Nearly two pages later is the bolded heading, "Extended Benefits Under the Permanent and Total Disability Feature." It reads:

> "You may apply for an Accelerated Death Benefit payment if you have qualified for an extension of your life insurance because of your permanent and total disability, as long as you have not previously requested and received an Accelerated Death Benefit payment. All of the terms of the Accelerated Death Benefit feature will apply to an Accelerated Death Benefit request you make while your life insurance is being extended under the terms of the permanent and total disability provision."

Jackson is covered under the permanent and total disability feature, and it is undisputed that he is not terminally ill under Aetna's definition.

Aetna contends that this provision simply clarifies that plan participants receiving WOP benefits may be eligible to receive ADB coverage if they meet the criteria. Jackson contends that the statement "[y]ou *may* apply for [ADB coverage] if you have qualified for [WOP benefits]" "clearly qualifies" him for ADB coverage. He

12

argues that if Aetna's interpretation was correct, the above quoted section would be superfluous and only included to confuse claimants. The Court disagrees. The plain language of the policy states that those covered under permanent and total disability are permitted to apply for ADB coverage. They are not entitled to coverage just because they are disabled. This interpretation is supported by the second sentence of the section, which provides "[a]ll of the terms of the Accelerated Death Benefit feature will apply . . . ." Accordingly, the applicant must still be terminally ill to be eligible to receive ADB coverage, even if they qualify for WOP benefits.[11] A plain reading of the statute dictates that Jackson is not entitled to ADB coverage.[12]

In the alternative, Jackson contends that the Texas Administrative Code requires Aetna to honor Jackson's ADB claim

---

[11] Jackson also argues that the policy can be read as awarding ADB coverage when the claimant or their spouse is "diagnosed with an illness **or** physical condition that has resulted in you being terminally ill." Under that interpretation, the applicant would be eligible when they submit (1) proof of an illness or (2) proof of a physical condition that would reasonably cause the claimant to die within two years. It is unreasonable to interpret this provision as allowing ADB coverage for any illness, but only for physical conditions that result in death within two years. Such a reading would create a grossly unproportional standard for claimants, and an odd grammatical reading.

[12] Jackson argues that at the very least, the provision is ambiguous and under the rule of *contra proferentum*, should be construed in favor of him, the insured. Any potential ambiguity that Aetna may have created by stating that claimants receiving WOP benefits "may" apply for ADB coverage was cured by immediately stating that "[a]ll of the terms" of ADB still apply. But there is no ambiguity.

because of his permanent and total disability. It relies on two provisions, one of which requires that the policy clearly define the benefits it provides, and appears irrelevant to his argument. TEX. ADMIN. CODE § 3.4303.[13] The other provides that "[a]n acceleration-of-life-insurance benefit provision provides a special benefit under a life insurance contract, which prepays all or a portion of the death benefit, based either on a long-term care illness, specified disease, or terminal illness." TEX. ADMIN. CODE § 3.4302. Specified disease is defined as a condition likely to cause permanent disability, among other ailments. Id. According to Jackson, this provision requires Aetna to provide ADB coverage to all claimants with a long-term illness, a specified disease, *or* a terminal illness. Aetna asserts that the provision allows insurers to provide ADB for these three categories of conditions and illnesses, but does not require them too.[14] Nothing in this subchapter indicates that insurers are required to provide ADB coverage based on the definition provided therein. Importantly,

---

[13] Section 3.4303 provides that "Acceleration-of-life-insurance benefits, and the illness, condition, care or confinement necessary to evidence that the insured has either a long-term care illness, specified disease or terminal illness, shall be clearly defined in the life insurance contract consistently with this subchapter."

[14] Notably, the purpose of this provision is to "[e]xpand the circumstances under which insurers can offer acceleration-of-life-insurance benefits, thus enhancing financial choices for insureds facing terminal or life-threatening illnesses or conditions." TEX. ADMIN. CODE § 3.4301.

14

the Texas Insurance Code provides that "an insurer *may* pay an accelerated benefit under an individual or group term life insurance policy or certificate if . . . the insured has (A) a terminal illness; (B) a long-term care illness; *or* an illness or physical condition that is likely to cause permanent disability or premature death." TEX. INS. CODE § 1111.052(1)(emphasis added). The Court strains to see Jackson's interpretation of the Administrative Code as reasonable, but to the extent any ambiguity exists, the Texas Insurance Code plainly permits Aetna to only offer ADB coverage to terminally ill claimants.[15]

*B.*

Again, the clear language of the policy justifies Aetna's reduction of Jackson's Long Term Disability benefits. One page into the "Your Disability Plan: Long Term Disability (LTD)

---

[15] In the alternative Jackson contends that Aetna discriminated against "insureds with different qualifying events," in violation of TEX. ADMIN. CODE § 3.4311. Section 4311 provides that "[i]nsurers offering acceleration-of-life-insurance benefits shall not engage in unfair, discriminatory or deceptive practices in relation to the offer, sale or administration of acceleration-of-life-insurance benefits, including . . . unfair discrimination among insureds with different qualifying events." However, insurers are not required to provide ADB coverage to claimants with permanent disabilities. TEX. INS. CODE § 1111.052(1). Enforcing a provision that denies benefits to a claimant based on their condition, in compliance with the governing state and federal law and consistent with the clear language of the policy, does not amount to discrimination.

Coverage" portion of KiOR's Long Term Disability Benefit Plan is a section entitled "Benefits Payable." It states:

> Any other income benefits you are eligible for may affect your benefits from this plan. The amount of the other income benefits will be subtracted from your monthly LTD benefits for which you are eligible. . . . Please refer to the *Other Income Benefits* section of this Booklet-Certificate for details as to which other income benefits may reduce your monthly LTD benefit.

Three pages later, under the bolded "Other Income Benefits" heading, the policy explains that "[o]ther income benefits can affect the monthly benefit described in the long term disability coverage section."[16] It also states that benefits paid to the claimant or their dependents because of the claimant's disability are taken into consideration. The policy then lists all of the benefits considered "other income benefits," specifically including "[d]isability, retirement, or unemployment benefits required or provided for by governmental law", such as benefits

---

[16] Before this provision is a shadowed box entitled "Important Note." It states "Please read this section carefully. It explains how and when other income benefits reduce your monthly LTD benefit. ***It is your responsibility to enroll or apply for benefits from other sources if you are eligible.***"

payable under the Federal Social Security Act and statutory disability benefits.[17]

Jackson contends that the policy's language that "other income benefits *can* affect" LTD benefits does not provide notice that his monthly benefits will be deducted based on his receipt of Social Security Disability Income benefits. In isolation, that first sentence would not provide the requisite notice. But the very next sentence discloses to the claimant that any "other income benefits" will be subtracted from the monthly LTD benefits. The policy then clearly defines "other income benefits" as including disability benefits from the Social Security Administration. Contrary to Jackson's assertion, any claimant of "average intelligence and experience" could reasonably deduce that his LTD benefits would be reduced if he received other benefits.

In later sections, Aetna discloses that the claimant and his family are obligated to apply for other benefits, and the consequence of receiving them. In the section entitled "Aetna Requires Proof of Other Income," Aetna explains that the claimant, his spouse, and his dependents must submit proof that they have applied to all other income benefits for which they may be eligible

---

[17] The next section is entitled "Other Income Benefits That Do Not Reduce Monthly Benefits," and lists the income that does not reduce the claimants monthly disability benefits, such as retirement benefits provided before the claimant became disability and 401(k) plans. The Court notes that SSDI payments are not included in this list.

because of the claimant's disability. The policy states that "[i]f you do not provide the proof that Aetna may require, Aetna has the right to suspend or adjust this plan's benefits by the estimated amount of the other income benefits." In the "Recovery of Overpayments" section, the policy provides that if the claimant receives "other income benefits," such as "Federal Social Security benefits," that results in the claimant receiving amount greater than they are entitled to receive, the claimant must return the overpayment.

The policy unambiguously requires that any payments made from the Social Security Administration because of the claimant's disability, whether made to the claimant or to his dependents, be deducted from the claimant's LTD benefits. Moreover, if other income benefits are not deducted from the LTD benefits, the claimant is being overpaid, and will be required to reimburse Aetna for those overpayments. Jackson's son was a dependent when receiving his SSA benefits, awarded on the basis of Jackson's disability. Therefore, any payments made to him would be included in "other income benefits" and reduce Jackson's LTD benefits. The policy provided Jackson with sufficient, and abundant, notice that payments made from SSA to him and his son would be considered

"other income benefits" and would be deducted from his monthly LTD benefits.[18]

The plain language of KiOR's policy authorizes (1) Aetna's denial of Jackson's application for Accelerated Death Benefit coverage and (2) Aetna's reduction of Jackson's Long Term Disability benefits due to Jackson's receipt of Social Security Disability Income and Jackson's son's receipt of Family Social Security Benefits. Accordingly, IT IS ORDERED: that Jackson's motion for summary judgment is DENIED and Aetna's motion for summary judgment is GRANTED.

New Orleans, Louisiana, December 19, 2017

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

[18] Notably, Jackson signed an agreement when applying for LTD benefits acknowledging that if "[Jackson] or [his] eligible dependents may become entitled under the United States Social Security Act or from any of the other income sources described in the LTD policy, [he] hereby agree[s] to reimburse Aetna for any and all overpayments made to [him] under the LTD policy."